TIBBS *v.* EQUITABLE LIFE ASSUR. SOC.

(*Nashville,* December Term, 1942.)

Opinion filed February 27, 1943.

Joseph L. Lackey, of Nashville, for plaintiff in error.

Seay, Stockell & Edwards, of Nashville, for defendant in error.

Mr. Justice Prewitt delivered the opinion of the Court.

This is a suit on an insurance certificate held by plaintiff, George Tibbs, for permanent and total disability benefits. The trial judge granted a motion for a directed verdict on the ground that even though the defendant

was notified of the claimed disability, yet plaintiff's proof of claim showed by his own physician that he was able to work when he severed his connection with the DuPont Company, his employer, on June 1, 1937, and that, therefore, there was no material evidence that he was permanently and totally disabled at the time of his discharge. The judgment of the circuit court was by the Court of Appeals reversed, the latter court holding that the defendant was duly notified of plaintiff's disability and that there was material evidence that plaintiff was permanently and totally disabled at the time of his discharge.

The defendant has filed its petition for writs of *certiorari* and *supersedeas* in this court.

The certificate is based upon a group policy issued by defendant to the DuPont Company and subsidiary companies. The certificate provides: "In the event that any Employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such Employee, under the policy, pay equal monthly Disability-instalments, the number and amount of which shall be determined by the Table of Instalments below. The amount of insurance referred to in this provision is the total amount shown in the Insurance Schedule set forth in the Employer's Insurance Plan on the second page hereof for an Employee having the same length of continuous service, as the totally and permanently disabled Employee."

Plaintiff was a colored man forty-two years old. He had worked for the DuPont Company about ten years regularly and in October, 1936, became sick while at work. He went to the first-aid station maintained by the DuPont Company and was there examined by the company's physician, who sent him to Dr. T. R. Guill, his personal physician. Dr. Guill treated him for several weeks but was never able to determine the cause of his illness. It seems that plaintiff constantly complained of his back.

Plaintiff returned to work December 1, 1936, and worked until January 15, 1937, when he again became ill and went back to Dr. Guill for treatment. He was unable to resume work, and Dr. Z. C. Gammel, who was employed by DuPont Company, sent him to the Vanderbilt Hospital. There he received treatment regularly from February 10, 1937, to May 29, 1937. His condition did not improve.

Plaintiff received thirteen weeks' pay under a health and accident policy from October, 1936, to February 28, 1937. This certificate was based on a group policy issued by defendant to the DuPont Company. The amount collected by plaintiff was the maximum payable under the health and accident policy.

On May 30, 1937, plaintiff returned to work at the DuPont Company. He worked one day this time and again became ill. Later on he reported to Mr. Queener of the DuPont Company and told the latter he was unable to work, and Mr. Queener told him, according to the testimony of the plaintiff, that the best thing he could do was to get on a farm where he would be in the fresh air all the time.

From October, 1936, to June 1, 1937, various doctors examined the plaintiff and none of them were definitely

able to determine what was wrong with him. He was finally discharged on June 1, 1937. Under the terms of his contract his insurance was terminated on that date.

After his discharge, the plaintiff was treated by Dr. Guill, Dr. J. M. Tyus of Meharry Hospital, and Dr. T. H. Bullard. Dr. Tyus testified that he was suffering with angina pectoris, and Dr. Bullard testified that he was suffering with a heart ailment—a weakening of the valves of the heart—and that his condition would be permanent and in his opinion plaintiff was suffering from this condition on June 1, 1937.

Several lay witnesses testified that before and after June 1, 1937, the plaintiff was unable to work, and that he suffered from fainting and smothering spells.

Notice of the claim of plaintiff was submitted to the defendant on February 9, 1940. Plaintiff commenced this suit on May 28, 1941. The proof of loss was given defendant more than a year before suit was commenced. The Court of Appeals held that the proof of loss was given within proper time according to the provisions of the policy.

In *Johnson* v. *Scottish Union, etc., Ins. Co.,* 160 Tenn., 152, 22 S. W. (2d), 362, it was held that failure to file notice and proof of loss within the period named in the policy does not work a forfeiture where the policy does not specifically provide for a forfeiture under such circumstances, citing *Insurance Co.* v. *Whitaker,* 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916.

The trial judge excluded the testimony of Dr. Bullard to the effect that he examined the plaintiff about two years after his discharge and found him suffering with heart trouble—a weakening of the valves of the heart—and in his opinion he was a sufferer of this heart dis-

ease on June 1, 1937. This evidence was excluded on the ground that the physician's opinion, coming two years after plaintiff's discharge, was a mere conjecture. The Court of Appeals held the exclusion of the testimony to be erroneous.

In *American Nat. Ins. Co.* v. *Smith,* 18 Tenn. App., 222, 227, 228, 74 S. W. (2d), 1078, 1081 (*certiorari* denied by this Court October 13, 1934), the court said: "Ordinarily, the value of an expert's opinion is for the jury to determine; and this would apply in the instant case to the testimony given in answer to hypothetical questions. But the testimony of certain of these physicians was positive, direct, not mere opinion, as to the existence of the ulcer on the date of the policy. In *Bennett* v. *Fail,* 26 Ala. 605, it was held that an opinion of a medical expert as to the length of time a disease has existed, based upon personal examination, should not be discredited by the court by a charge that the testimony of such physician is a matter of opinion only. We deal here with a hidden disease, the very symptoms of which would not be apparent to a layman. When the case concerns a highly specialized branch of medical science, with respect to which a layman could have no knowledge (as to the length of the prior existence of an ulcer which had ruptured), the court must depend upon expert testimony; and, in such case, in the absence of substantial evidence to the contrary, it is improper to submit the issue to the jury. *Vaughan* v. *Oliver,* 3 Tenn. App., [559], 566; *Ewing* v. *Goode,* C. C., 78 F., 442, 444; *Moratzky* v. *Wirth,* 74 Minn., 146, 76 N. W., 1032; *Clark* v. *State,* 12 Ohio, 483, 40 Am. Dec., 481."

It seems that several physicians had examined the plaintiff and found nothing wrong with him except the trouble with his back. None of these physicians claim

that they examined him with reference to a heart ailment. Here we find many lay witnesses testifying that they had observed the plaintiff before and after his discharge from the employ of the DuPont Company on June 1, 1937, and that he suffered with fainting spells.

A certificate of Dr. Tyus submitted in the proof of loss stated that he visited plaintiff on July 1, 1939, and he was suffering with an attack of angina pectoris. We think the testimony of Dr. Bullard, expressing his opinion after an examination, was competent, and the trial judge was in error in excluding this testimony.

Total and permanent disability are issues of fact to be determined on the evidence adduced in each individual case. *Metropolitan Life Ins. Co.* v. *Noe,* 161 Tenn., 335, 31 S. W. (2d), 689.

In *Pacific Mut. L. Ins. Co.* v. *McCrary,* 161 Tenn., 389, 392, 32 S. W. (2d), 1052, 1053, this court said: "One may still be described as totally disabled, although he is able at intervals to perform certain acts in connection with the former occupation or calling that he pursued."

In *Burrell* v. *Provident Life & Acc. Ins. Co.,* 162 Tenn., 672, 39 S. W. (2d), 1031, it was held that the phrase "total disability" means inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner.

We are therefore of opinion that there was material evidence to be submitted to the jury on the question of the permanent and total disability of the plaintiff on June 1, 1937.

Writ denied.